UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ENROY BISHOP,

        Petitioner,

-against-

LYNN LILLEY, Superintendent

        Respondent.

**ORDER**

17 Civ. 7625 (PGG) (KHP)

PAUL G. GARDEPHE, U.S.D.J.:

        On September 21, 2017, pro se petitioner Enroy Bishop filed a habeas corpus petition pursuant to 28 U.S.C. § 2254. (Dkt. No. 1) On November 16, 2017, this Court referred Bishop's petition to Magistrate Judge Katherine Parker. (Dkt. No. 4)

        On May 9, 2018, Respondent Lynn Lilley moved to dismiss the petition as untimely. (Dkt. No. 16) On October 12, 2018, Judge Parker issued a 15-page Report and Recommendation ("R&R") recommending that the petition be dismissed. (Oct. 12, 2018 R&R (Dkt No. 27)) Petitioner has filed objections to the R&R, but his objections raise issues directly addressed by Judge Parker. For the reasons stated below, this Court will adopt the R&R in its entirety, and will dismiss the petition.

## BACKGROUND

        On February 14, 2012, a jury sitting in Supreme Court of the State of New York, New York County, convicted Petitioner of assault in the first degree and gang assault in the first and second degrees for his participation in the stabbing of Jermaine Smith outside the Chelsea Piers bowling alley in Manhattan. (Pet. (Dkt. No. 1) Ex. 3, at 2) On February 29, 2012, Petitioner was sentenced to twelve years' imprisonment and two-and-a-half years of supervised release. (Id. at 1)

The jury heard testimony from four eyewitnesses – including the victim – all of whom identified Petitioner as the main perpetrator of the assault. The People also introduced video from three surveillance cameras, and still images from the video. (Id. Ex. 3, at 3)

On June 13, 2013, Petitioner appealed his conviction to the Appellate Division, First Department. (Pet. at 2 & Exs. 1, 2 (Dkt. Nos. 1-1, 1-2)) Petitioner raised six issues on appeal. Petitioner argued that the trial court erred in (1) instructing the jury on accessorial liability; (2) giving a missing witness charge while the jury was deliberating; (3) not dismissing the gang assault charges as a matter of law, based on insufficiency; and (4) instructing the jury as to the gang assault charges. Petitioner also contended that the evidence was insufficient to sustain any of his convictions, and that his sentence was excessive. (See Pet. Exs. 1, 2 (Dkt. Nos. 1-1, 1-2)) On May 1, 2014, the Appellate Division unanimously affirmed. People v. Bishop, 117 A.D.3d 430 (1st Dep't 2014). On July 25, 2014, the Court of Appeals denied Petitioner's application for leave to appeal. See People v. Bishop, 23 N.Y.3d 1034 (2014).

On May 26, 2015, Petitioner filed a motion pursuant to § 440.10 of the New York Criminal Procedure Law ("CPL") for an order vacating his judgment of conviction. Petitioner argued actual innocence and newly discovered evidence. (Pet. at 3-4) The new evidence consisted of three enhanced still images from the surveillance video admitted at trial. (Bishop Decl. (Dkt. No. 19) ¶ 12) Two of the enhanced still images were shown to the jury at trial. (Id.) Petitioner argues that the images show that another person possessed the weapon used to stab the victim, and that Petitioner was not the primary assailant. (See id.)

On March 10, 2016, the New York County Supreme Court denied Petitioner's §440.10 motion, finding that the still images were not new or exculpatory evidence, and that Petitioner had not made out a prima facie case for actual innocence. (Pet. Exs. 3, 4 (Dkt. Nos. 1-

3, 1-4)) On June 7, 2016, the Appellate Division denied Petitioner's application for leave to appeal the denial of his CPL § 440.10 motion. (Long Decl. (Dkt. No. 17) Ex. O)

In the Petition, Petitioner asserts that he did not receive notice of the Appellate Division's decision denying his leave application until he wrote to the Appellate Division in June 2017, inquiring as to the status of his leave application. (Pet. ¶ 14; Pet Br. (Dkt. No. 20) at 3) He asserts that he did not receive a copy of the Appellate Division's decision denying his leave application until July 21, 2017. (Id.)

The Appellate Division's file concerning Petitioner's leave application is stamped "OMTDAPOI" on June 7, 2016, with what appears to be a clerk's initials below that date. (Long Decl. (Dkt. No. 17) Ex. P) According to Respondent, the acronym means "order mailed to defendant at place of incarceration." Accordingly, the stamp on the file concerning Petitioner's leave application indicates that the Appellate Division's decision denying Petitioner leave to appeal was mailed to Petitioner on June 7, 2016. (Id. ¶ 8)

The instant Petition was filed on September 21, 2017. (Dkt. No. 1-1, at 1) Petitioner incorporates the six grounds for relief set forth in his direct appeal to the Appellate Division, as well as the claim of actual innocence made in his CPL § 440.10 motion. (Pet. at 4) Respondent has moved to dismiss, arguing that the Petition is time-barred. Respondent claims that the Petition is time-barred because (1) it was filed 321 days after the expiration of the Antiterrorism and Effective Death Penalty Act ("AEDPA") limitations period; (2) Petitioner is not entitled to equitable tolling; and (3) Petitioner is not actually innocent. (Dkt. No. 18)

On October 12, 2018, Judge Parker issued an R&R recommending that Respondent's motion be granted, and the Petition be dismissed. (Dkt. No. 27) On January 30, 2019, this Court mailed a copy of the R&R to Petitioner, and ordered that any objections be filed

3

within fourteen days. (Dkt. No. 29) In a February 13, 2019 letter, Petitioner sought a 30-day extension to file objections. (Dkt. No. 30) The Court granted the request, and gave Petitioner until March 13, 2019, to file objections. (Dkt. No. 31) Petitioner filed his objections on March 22, 2019. (Dkt. No. 32)

## DISCUSSION

### I. STANDARD OF REVIEW

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party raises an objection to a magistrate judge's report, "the court is required to conduct a de novo review of the contested sections." Pizarro v. Bartlett, 776 F. Supp. 815, 817 (S.D.N.Y. 1991). However, "[w]hen a party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." Barratt v. Joie, No. 96 Civ. 0324 (LTS), 2002 U.S. Dist. LEXIS 3453, at *2 (S.D.N.Y. Mar. 4, 2002) (citations omitted).

Here, Petitioner's objections were not timely filed. Moreover, Petitioner's objections merely reiterate arguments Judge Parker considered and rejected concerning (1) the "enhanced images" Petitioner submitted in connection with his CPL § 440.10 motion, and (2) Petitioner's diligence in obtaining the Appellate Division's decision denying his leave application.

The Court has reviewed Judge Parker's R&R and is satisfied that there is no clear error on the face of the R&R. See Nelson v. Smith, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985).

4

## II. TIMELINESS

In considering Respondent's timeliness argument, Judge Parker correctly applied the AEDPA's one-year statute of limitations. See 28 U.S.C. § 2244(d)(1). Under that statute, the limitation period begins to run on the latest of four dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id. § 2244(d)(1)(A)-(D). "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." Id. § 2244(d)(2).

Here, the date on which the state court judgment became final by the conclusion of direct review is the applicable provision for determining the limitations period. Under the AEDPA, a conviction becomes final by virtue of the exhaustion of all direct appeals or expiration of the time period for filing such direct appeals. See Anderson v. O'Gara, No. 01 Civ. 5712 (WHP) (GWG), 2002 WL 1633917, at *3 (S.D.N.Y. July 23, 2002). Petitioner's leave to appeal was denied by the Court of Appeals on July 25, 2014. People v. Bishop, 23 N.Y.3d 1034 (2014). Petitioner thereafter had 90 days to file a writ of certiorari with the Supreme Court. See Sup. Ct. R. 13 ("[A] petition for a writ of certiorari to review a judgment in any case, civil or criminal, entered by a state court of last resort . . . is timely when it is filed with the Clerk of this

5

Court within 90 days after entry of the judgment."). Accordingly, Petitioner's limitations period began to run on October 23, 2014.

Petitioner's limitations period was tolled during the pendency of his CPL § 440.10 motion, however. That motion was pending from May 26, 2015 to June 7, 2016. Accordingly, Petitioner's limitations period expired on November 4, 2016. Because the instant Petition was not filed until September 21, 2017, it is untimely under 28 U.S.C. § 2244(d)(1)(A).

## III. <u>EXCEPTIONS TO AEDPA'S ONE-YEAR STATUTE OF LIMITATIONS</u>

As Judge Parker notes, there are two exceptions to the AEDPA's limitations provisions. First, the limitations period may be equitably tolled where a petitioner establishes: "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.'" Harper v. Ercole, 648 F.3d 132, 136 (2d Cir. 2011) (quoting Holland v. Florida, 560 U.S. 631, 649 (2010)). Second, "a habeas petitioner asserting a credible claim of actual innocence may overcome AEDPA's statute of limitations." McQuiggin v. Perkins, 569 U.S. 383, 398 (2013).

### A. <u>Equitable Tolling</u>

Equitable tolling is warranted only in "rare and exceptional circumstances." Harper, 648 F.3d at 136 (quoting Baldayaque v. United States, 338 F.3d 145, 151 (2d Cir. 2003)). The petitioner must show that he diligently pursued his rights, that he faced an "extraordinary circumstance" preventing the timely filing of his petition, and that the extraordinary circumstance had a causal relationship to the lateness of his filing. Jenkins v. Greene, 630 F.3d 298, 302-03 (2d Cir. 2010) (quoting Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000)). Stated another way, if Petitioner – acting with reasonable diligence – could have filed on time notwithstanding the extraordinary circumstance, no causal relationship exists. Id.

Petitioner argues that his limitations period should be subject to equitable tolling because he did not receive the Appellate Division's June 7, 2016 denial of his leave application until July 21, 2017. In support of his equitable tolling argument, Petitioner states that he did not inquire about the Appellate Division's decision until June 1, 2017, because he thought the court would need to "thoroughly research[] and weigh[] the merits of his . . . [a]pplication." (Bishop Decl. (Dkt. No. 19) ¶ 5) Furthermore, he reasonably expected the decision to be mailed to him in accordance with the Appellate Division's rules. (Dkt. No. 20, at 3) Petitioner further argues that he could not learn of the status of his leave application through the correctional facility's online resources, because he did not know the case citation, which he alleges is required to request a copy of the court's decision. (Bishop Decl. (Dkt. No. 19) ¶ 7) Finally, Petitioner claims that he and his father were estranged, and that accordingly he could not obtain a copy of the Appellate Division's decision through his father. (Id.)

None of Petitioner's excuses demonstrate that he diligently pursued his rights. As an initial matter, Petitioner took no steps between April 11, 2016 – when his leave application was filed – and June 1, 2017, to determine the status of his application. Petitioner thus waited 416 days to inquire about the status of his leave application. Moreover, and contrary to Petitioner's assertion, during that time he could have ascertained the status of his application through resources offered at his facility, even without the complete case citation. (See Long Reply Decl. (Dkt. No. 25) ¶ 2 & Ex. X) For example, the Inmate Legal Resources Program allows inmates to submit "court decision requests without citations." (Id. ¶ 2) Finally, Petitioner could have asked a family member to look up the decision, given that telephone records show that Petitioner was in frequent contact with family members. (Id. ¶ 9 & Ex. Y) The Court concludes that Petitioner has not met his burden to show that he diligently pursued his rights.

7

Petitioner's reliance on Diaz v. Kelly, 515 F.3d 149 (2d Cir. 2008) is misplaced. In that case, there was evidence that the state appellate court had not sent petitioner its decision until he inquired approximately six months after the court's decision had been issued. Id. at 154. Here, however, the record indicates that the Appellate Division's decision denying Petitioner's leave application was sent to Petitioner on the day it was issued. (See Long Decl. ¶ 8 & Ex. P) Moreover, in Diaz, petitioner filed his habeas petition one day after receiving the Appellate Division's decision. Diaz, 515 F.3d at 152-53. Here, not only did Petitioner wait more than a year to inquire about the status of his leave application; his habeas petition was not filed until two months after he learned of the Appellate Division's decision. Furthermore, while in Diaz the petitioner's habeas petition was a little over three months late (see id. at 152), here Petitioner's habeas petition is more than a year late.

Finally, other courts in this District have found that the "reasonable diligence" requirement is not met in circumstances similar to those case. See, e.g., Jimenez v. Phillips, No. 04 Civ. 10155 (RWS), 2006 WL 118369, at *3 n.2 (S.D.N.Y. Jan. 16, 2006) (reasonable diligence not shown where petitioner waited more than 18 months before inquiring about the status of his appeal) (collecting cases); see also Thrower v. Laird, No. 06 Civ. 4864 (JSR) (AJP), 2006 WL 3735649, at *2 (S.D.N.Y. Dec. 14, 2006) (reasonable diligence not shown where petitioner had not explained when he expected to hear about his appeal; the steps he took to learn the status of his appeal; when he found out about the denial of his appeal; and what steps he took thereafter), adopted by 2007 WL 294096 (S.D.N.Y. Jan. 30, 2007).

The Court concludes that equitable tolling is not applicable here.

**B. <u>Actual Innocence</u>**

Petitioner also argues that his petition should be considered on the merits because he is actually innocent. To succeed on such a claim, Petitioner must make a credible and compelling claim of actual innocence. See Rivas v. Fischer, 687 F.3d 514, 540-41 (2d Cir. 2012). To be credible, the claim must be supported by "'new reliable evidence . . . that was not presented at trial.'" Id. at 541 (quoting Schlup v. Delo, 513 U.S. 298, 324 (1995)). To be compelling, the actual innocence claim must demonstrate that "more likely than not, in light of new evidence, no reasonable juror would find [petitioner] guilty beyond a reasonable doubt." Id. (quoting House v. Bell, 547 U.S. 518, 538 (2006)).

Here, Petitioners relies on three still images derived from surveillance video that was admitted at trial. The New York County Supreme Court, in denying Petitioner's CPL § 440.10 motion, held that these images were neither new nor exculpatory. (Long Decl., Ex. L) This Court agrees. First, the images are not "new" evidence that was "not presented at trial." Rivas, 687 F.3d at 541 (quoting Schlup, 513 U.S. at 324). They are merely "enhanced" images taken from surveillance video that was admitted at trial. Moreover, two of the still images cited by Petitioner were admitted at trial. In any event, given that (1) the surveillance video from which the still images were derived was "introduced into evidence by the People at trial"; and (2) "the defense had possession of the video for eight months prior to trial," (Long Decl. (Dkt. No. 17) Ex. M at 7-8, 16), the images cited by Petitioner do not constitute "new evidence."

Petitioner has also not demonstrated that the outcome of his trial would have been different if these images had been admitted. Two of the still images were seen by the jury, and the surveillance video from which all three images were derived was introduced at trial. The "enhanced" images cited by Petitioner are blurry and inconclusive as to whether he possessed a

9

weapon, or whether he acted in concert with a person holding a weapon. The images also do not show the stabbing, and thus do not contradict the testimony of the four eyewitnesses at trial. In sum, Petitioner has not made out a claim of actual innocence.

Because Petitioner has not satisfied either exception to the AEDPA's limitations period, his petition is untimely. Therefore, Respondent's motion to dismiss will be granted.

## CONCLUSION

For the reasons stated above, this Court adopts Judge Parker's Report & Recommendation in its entirety, and Respondent's motion to dismiss is granted. The Clerk of Court is directed to terminate the motion (Dkt. No. 16), and to close this case. The Clerk is further directed to mail a copy of this Order to pro se Plaintiff.

Dated: New York, New York
       March 28, 2019

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge